## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JEROME BLACKSHEAR,**
      **Plaintiff,**

**vs.**                      **Case No. 5:07cv144/MCR/MD**

**NORMA B. GILO, et al.,**
      **Defendants.**

---

### REPORT AND RECOMMENDATION

      This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon defendants Norma B. Gilo, Expedito M. Salvador and Lisa Griffin's special report and supporting documents filed on September 4, 2007.  (Doc. 86).  The *pro se* plaintiff, who is proceeding *in forma pauperis* in this action, has responded to the special report.  (Doc. 93).  On October 23, 2007, the court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special report would be construed as a motion for summary judgment as of November 23, 2007. (Doc. 94). On October 29, 2007 plaintiff filed a supplemental response.  (Doc. 97).  Upon review of the submissions of the parties, it is the opinion of the undersigned that the motion for summary judgment filed by defendants should be granted.

### BACKGROUND

      Plaintiff is an inmate of the Florida penal system currently confined at Columbia Correctional Institution.  He has filed a second amended complaint against these and other defendants, in which he claims he was deprived of his Eighth Amendment right to adequate medical care for a skin condition while

confined at Gulf Correctional Institution ("Gulf CI") and Baker Correctional Institution ("Baker CI"). (Doc. 78, Attach. 41, Second Am. Compl.). As relief, plaintiff seeks monetary damages against each defendant and injunctive relief against the Baker CI defendants.[1] The defendants employed at Baker CI remain in a pending action in the Middle District, Case Number 3:06cv189. The defendants in the instant case (Gilo, Salvador and Griffin) were severed from that case and transferred to this court's jurisdiction. (Doc. 78, Attach. 79, Order of 6/8/07).

Defendants Gilo, Salvador and Griffin (hereinafter "defendants"), in their motion for summary judgment, argue that the record evidence they have produced (plaintiff's medical records) establishes that plaintiff received adequate and appropriate medical care for his skin condition, and that plaintiff's dissatisfaction with the manner and method of his treatment amounts only to a difference in opinion which is not actionable under § 1983. (Doc. 86).

Plaintiff has responded by submitting affidavits of himself and other inmates who witnessed his condition. (Doc. 93, Blackshear Aff., Franklin Aff., Johnson Aff.; Doc. 97, Blackshear Aff.).

## DISCUSSION

### Summary Judgment Standard

In order to prevail on their motion for summary judgment, defendants must show that plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). If the defendants successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

---

[1] Plaintiff requests that the court order Baker CI to provide an evaluation by an "independent expert skin specialist" and to transfer plaintiff to South Bay Correctional Facility.

summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.  Accord Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  Furthermore, plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting FED. R. CIV. P.  56(c), (e)); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999). A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

<u>Eighth Amendment Standard</u>

In assessing a claim of cruel and unusual punishment in violation of the Eighth Amendment, the court must consider "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958).  Cruel and unusual punishment, however, consists

only of a level of punishment that involves "the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976).  To establish a claim, plaintiff must demonstrate: a substantial risk of serious harm, defendant's deliberate indifference to that risk, and causation.  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1985)(citing *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 56 (1994), and *LeMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)).

The first requirement, the objective component of Eighth Amendment analysis, requires:

> conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation – one "denying 'the minimal civilized measure of life's necessities.'"

*Taylor v. v. Adams*, 221 F.3d 1254, 1257-58 (11th Cir. 2000)(citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981))), *cert. denied*, 121 S. Ct. 774, 148 L. Ed. 2d 673 (2001).  In the context of denial of medical care, this first requirement has been more specifically described as encompassing two subsidiary requirements: an objectively serious need, and an objectively insufficient response to that need.  *Taylor*, 221 F.3d at 1258 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-06, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)).

A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm,"  *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation omitted).  The seriousness of the deprivation of that need is measured by the detrimental effect that the deprivation brought upon the person. *Id.* at 1188-89.  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  *Id.* at 1188.

The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor* at 1258 (citing *Wilson v. Seiter*, 501 U.S. at 300, 111 S. Ct. at 2325) ("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)). "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor* at 1258 (quoting *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291).

Deliberate indifference is not established "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 114 S.Ct. at 1979. To sustain a claim, plaintiff must show that the challenged conduct was "very unreasonable in light of a known risk" of harm or suffering. *Hardin v. Hayes*, 52 F.3d 934, 939 (11th Cir. 1995)(citing *Farmer*, 114 S. Ct. at 1978-79). Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. *Murrell v. Bennett*, 615 F.2d 306, 310, n. 4 (5th Cir. 1980). An inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be "repugnant to the conscience of mankind." *Id.* at 105-06, 97 S. Ct. at 292; *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Negligence alone is not enough to violate the constitution. *Daniels, supra.*

Obviously, a complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). And medical treatment can be so slight as to amount to no treatment at all, and so the mere fact that treatment was provided does not end

the inquiry. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). Similarly, "grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference." *Id.*; *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (stating that medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference.). However, disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. *Estelle*, 429 U.S. at 107, 97 S.Ct. at 292; *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). Where the inmate has received medical attention, and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting *Waldrop*, 871 F.2d at 1035). To do otherwise would be "to constitutionalize claims that sound in tort law." *Hamm*, 774 F.2d at 1575. In other words, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop* at 1033.

Finally, the third requirement of an Eighth Amendment claim, causation, requires some causal connection between each defendant named and the injury allegedly sustained. *Marsh v. Butler County,* 268 F.3d 1014, 1035 (11th Cir. 2001*); Swint v. City of Wadley, Alabama,* 51 F.3d 988, 999 (11th Cir. 1995); *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). The causal connection may be established by proof that the official was personally involved in the acts that resulted in the constitutional deprivation, or where the official has established or utilized a policy or custom that results in deliberate indifference to a prisoner's rights. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700 (11th Cir. 1985).

<u>Material Facts</u>

The summary judgment evidence establishes these material facts underlying plaintiff's medical treatment claims. In setting forth these facts, the undersigned has

taken the evidence submitted by plaintiff in the light most favorable to him. However, where the defendants have submitted affirmative medical evidence establishing a particular fact, and plaintiff has failed to come forward with evidentiary material demonstrating a genuine issue for trial as to that fact, the undersigned has relied upon the medical evidence in the summary judgment record.

Plaintiff's claims against the defendants concern the medical care they provided for plaintiff's skin condition during the period March 28, 2005 to May 2, 2005. (Doc. 78, Attach. 41, Second Amd. Compl. at 8).[2] On or about March 28, 2005 plaintiff complained to defendants "of things crawling itching an[d] biting" him. (Compl. at 8). He was evaluated by defendant Nurse Griffin. (Doc. 86, Exs. B, C). Nurse Griffin completed two assessments: a jock itch assessment and a rash assessment. With regard to the jock itch assessment, plaintiff presented with complaints of itching and burning, stating "I've got jock itch bad," and indicating that the condition had been "ongoing" with a previous episode occurring on August 25, 2004. (*Id.*, Ex. B). Upon examination, Nurse Griffin observed scales on plaintiff's groin and testicles. (*Id.*). She assessed plaintiff as having "altered skin integrity" and, for a treatment plan, issued plaintiff tolnaftate powder and cream, noting "chart to clinician for possible renewal of TAC oint."[3] (*Id.*). In addition, Griffin instructed plaintiff to "wash groin 2x daily with warm, soapy water dry well; apply groin medication as instructed (instructions given)." (*Id.*). With regard to the rash assessment, plaintiff presented with complaints of pain and itching, indicating possible exposure to scabies. He reported that he had first noticed the rash two weeks earlier. (*Id.*, Ex. C). Upon examination, Nurse Griffin observed a rash on plaintiff's trunk, arms and between his fingers. (*Id.*). The rash was raised with "multiple postules in lines – worse around waist & wrist." (*Id.*). There was no

---

[2]Hereafter, references to plaintiff's second amended complaint (doc. 78, attach. 41) shall be by the abbreviation "Compl."

[3]MedlinePlus, a service of the United States National Library of Medicine and the National Institutes of Health, lists tolnaftate as a medication used to stop the growth of fungi that cause skin infections, including jock itch. *See* www.nlm.nih.gov/medlineplus/

evidence of infection.  Nurse Griffin noted the following treatment plan: "Clinician referral; Lindane Shampoo[4] UAD; watch callout for repeat in 1 week; dorm notified – spray sent to dorm; instructed on skin care, s/s of infection, medication compliance, F/U."  (*Id.*).

On April 4, 2005 plaintiff returned to medical sick call and was again seen by defendant Nurse Griffin.  Plaintiff complained of "white worm's [illegible] things crawling and biting."  (Compl. at 8).  Nurse Griffin instructed him to repeat the Lindane treatment.  (Doc. 86, Ex. A, p. 4).  In addition, Griffin issued a Health Slip/Pass authorizing "change all bed sheets, clothing, and sanitize mattress." (Compl. at 9).

On April 8, 2005 plaintiff was treated by defendant Clinical Associate Expedito Salvador and defendant Doctor Norma Gilo, Gulf CI Chief Health Officer, who noted the following: "Referred due to poss. crabs on chest, buttocks, thigh and arms." (Doc. 86, Ex. A, p. 5).  Salvador and Gilo observed lesions on plaintiff's chest, arms and thighs, and assessed plaintiff with "cutaneous larva migrans (creeping eruption)," the skin manifestation of a parasitic worm infestation.  (*Id.*; Compl. at 9). They ruled out scabies.  (Doc. 86, ex. A, p. 5).  Salvador and Gilo prescribed thiabendazole suspension (Mintezol) and Lindane,[5] instructed plaintiff on their use, and directed plaintiff to "change all beddings, clothes & mattress."  (*Id.*; Compl. at 9).  Defendants Salvador and Gilo saw plaintiff again on April 11, 2005, at which time they prescribed thiabendazole tablets, providing plaintiff instruction on their use. (*Id.*).  On May 2, 2005 Salvador and Gilo saw plaintiff again, noting that he was scheduled for a biopsy on May 3, 2005.  (Doc. 86, Ex. A, p. 6; Compl. at 9).

---

[4]The Physicians' Desk Reference lists Lindane shampoo as an ectoparasiticide and ovicide for treating head lice, crab lice and their ova.

[5]The Physicians' Desk Reference lists Mintezol (thiabendazole) as an anthelmintic for treating cutaneous larva migrans (creeping eruption), among other skin conditions.  Lindane shampoo is described in note 4 *supra*.  Linda lotion is listed as an ectoparasiticide and ovicide for treating scabies.

On May 3, 2005 plaintiff was transferred to the Reception and Medical Center. (Compl. at 9-10).  There, he was seen by Senior Licensed Practical Nurse S. Cooper who prescribed permethrin lotion.[6]  (Compl. at 10).  On May 6, 2005 plaintiff was transferred to Baker CI, where he received additional medical treatment and mental health counseling.  On October 10, 2005 plaintiff was seen by a dermatologist, Dr. Rexa Alidina.  Plaintiff states she provided a needle injection of an unidentified medication, and prescribed fluocinonide ointment (Lidex) and hydroxyzine pamoate (Vistaril).[7]  (Compl. at 12; Doc. 93, Blackshear Aff., Ex. Z-1).  After more medical care at Baker CI, plaintiff was seen again by Dermatologist Alidina on March 28, 2006. (Compl. at 15).  She treated plaintiff's condition "with one needle injection to paralyze the bugs, prescribed meds, Periactin 4 mg. tabs, triamcinolone ointment . . . and Kwell Shampoo.[8]  (*Id.*, Doc. 93, Blackshear Aff., Ex. C-1).  On June 12, 2006 Doctor Alidina injected plaintiff with Prozac, and refilled his prescription for triamcinolone ointment.  (Compl. at 15).  Thereafter, plaintiff states the Baker CI defendants discontinued treatment for his skin condition on the stated basis that Doctor Alidina expressed her belief that the condition was delusional.  (*Id.*).

<u>Conclusions of Law Regarding Material Facts</u>

The summary judgment record reveals no genuine issue of fact for trial concerning the nature of plaintiff's medical needs while at Gulf CI.  The court assumes (without deciding), as defendants apparently do, that plaintiff's skin condition constituted an objectively serious need, i.e., "one that [was] diagnosed by

---

[6]MedlinePlus lists permethrin as a medication used to treat scabies and lice infestations of the head, body, and pubic area.  *See* www.nlm.nih.gov/medlineplus/

[7]MedlinePlus lists fluocinonide ointment (Lidex) as a medication used to treat the itching, redness, dryness, crusting, scaling, inflammation, and discomfort of various skin conditions.  *See* www.nlm.nih.gov/medlineplus/.  The Physicians' Desk Reference lists hydroxyzine pamoate (Vistaril) as an agent for symptomatic relief of anxiety and tension associated with psychoneurosis.

[8]The Physicians' Desk Reference lists Periactin as an antihistaminic and antiserotonergic agent used to treat allergic reactions as well as dermatographism.  MedlinePlus lists triamcinolone as a medication used to treat the itching, redness, dryness, crusting, scaling, inflammation, and discomfort of various skin conditions.

a physician as mandating treatment or one that [was] so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Hill*, 40 F.3d at 1187 (quotation omitted).   Moreover, there is no genuine factual dispute concerning defendants' knowledge of that need or the treatment they provided.  The sole question is whether plaintiff has established a genuine issue of fact for trial as to whether Griffin's, Salvador's or Gilo's response/treatment was objectively unreasonable, that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Rogers v. Evans*, 792 F.2d at 1058.  The undersigned concludes that plaintiff has not.

The reasonableness of defendants' treatment is supported by the unrebutted medical evidence in the summary judgment record establishing that defendants responded to each of plaintiff's complaints by promptly examining, evaluating, treating (with medication), and monitoring his skin condition.  They never ignored plaintiff, denied him care, or were otherwise indifferent to his complaints.  Plaintiff maintains defendants' conduct was grossly incompetent for the following reasons: (1) their course of treatment consisted of only "education treatments," (compl. at 9-10, 17; doc. 93, Blackshear Aff. ¶¶ 8-11); (2) the treatment they provided was not the same as that later provided by the dermatologist, (doc. 93, Blackshear Aff. ¶ 8 and exs. Z-1, C-1); (3) defendants failed to immediately consult with an "expert dermatologist" (compl. at 9-10, 17); and (4) they failed to "order expert skin biopsy and blood tests."  (Doc. 93, Blackshear Aff. ¶ 11).  However, the medical evidence establishes that plaintiff received more than "education" concerning his complaints.  He received medication, sanitizing treatment for his cell and mattress, and new bedding and clothing.  Plaintiff's remaining arguments reflect nothing more than his disagreement with the medical treatment that was provided.  This is insufficient to establish deliberate indifference.  *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the

Eighth Amendment.") (quoting *Estelle*, 429 U.S. at 107, 97 S.Ct. at 293); *Harris*, 941 F.2d at 1505 (reiterating that a "simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a claim of cruel and unusual punishment).

Moreover, even assuming the truth of plaintiff's allegation that when he was eventually seen by a dermatologist the treatment differed from that provided by defendants, this does not raise a genuine factual dispute on the issue of deliberate indifference.  The fact that a different treatment was provided at a later point in time is insufficient for a reasonable jury to infer that the treatment defendants provided was grossly incompetent.  *Cf. Bismark v. Fisher*, 213 Fed. Appx. 892, 897 (11th Cir. 2007) ("[I]t is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference.") (quoting *Waldrop v. Evans*, 871 F.2d at 1033).

Based on the summary judgment record, plaintiff cannot show that defendants' conduct was objectively harmful enough to establish a constitutional violation, or that any defendant had the required subjective intent to punish plaintiff. *See, e.g., Ciccone v. Sapp*, 238 Fed. Appx. 487 (11th Cir. 2007) (affirming summary judgment to prison medical staff on prisoner's claim that staff were deliberately indifferent in the treatment of his scabies; medical evidence in the record established that after prisoner's initial treatment which eventually failed, prisoner had access to medical personnel and during the time he was waiting for his next physician's appointment, prisoner had access to nurses, was provided hydrocortisone for his rash and medication for his prior condition, and was instructed to take a cool shower); *Smith v. Swartz*, 2008 WL 313853 (N.D. Fla. Feb. 1, 2008) (granting summary judgment to prison doctor on inmate's claim that doctor was deliberately indifferent to his skin condition caused by insect infestation; medical records showed that plaintiff was seen numerous times by doctor, that doctor prescribed various creams for condition and issued medical pass ordering that plaintiff's bunk be sprayed and his linens changed; plaintiff came forward with

no evidentiary material to support his claim that doctor ignored or was otherwise indifferent to his medical issues).[9]

## CONCLUSION

Taking the summary judgment evidence in a light most favorable to plaintiff, the record demonstrates that there is no genuine issue of material fact for trial, and that defendants Gilo, Salvador and Griffin are entitled to judgment as a matter of law.

Accordingly it is respectfully RECOMMENDED:

1.  That defendants Gilo, Salvador and Griffin's motion for summary judgment (doc. 95) be GRANTED, and the clerk be instructed to enter judgment in favor of the defendants.

2.  That the clerk be directed to close this file.

At Pensacola, Florida this 20th day of February, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

---

[9] The undersigned cites these cases only as persuasive authority and recognizes that they are not considered binding precedent. *See* 11th Cir. R. 36-2.